UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
____

SAMUEL BUSH,

     Plaintiff,     Case No. 1:24-cv-553

v.              Honorable Phillip J. Green

HEIDI WASHINGTON, et al.,

     Defendants.
_____/

**OPINION**

    This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983 and the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 *et seq.* The Court will grant Plaintiff leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 3.)

    This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the

named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that

"[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

3

standards, the Court will dismiss the following claims for failure to state a claim: (1) Plaintiff's First Amendment claims; (2) Plaintiff's Fourteenth Amendment due process and equal protection claims; (3) Plaintiff's personal capacity ADA claims; and (4) Plaintiff's official capacity ADA claims against Defendants Davids, Vonn, Dunigan, Jansen, Milastend, Santiago, and Maranka. The following claims remain: (1) Plaintiff's Eighth Amendment claims against all Defendants; and (2) Plaintiff's official capacity ADA claim against Defendant Washington.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. The events about which he complains occurred there. Plaintiff sues MDOC Director Heidi Washington in her official and personal capacity. Plaintiff also sues the following ICF personnel in their official and personal capacities: Warden John Davids, Deputy Warden Unknown Vonn, Assistant Deputy Warden Unknown Dunigan, Case Workers Unknown Jansen and Unknown Milastend, Prison Counselor Unknown Santiago, and Unit Chief Unknown Maranka.

On April 6, 2024, Plaintiff was placed in the Unit 2 segregation Start Now program[2] at ICF after receiving a misconduct for fighting (Compl., ECF No. 1,

---

[2] The Court has previously recognized that Start Units are programs designed to provide an alternative to administrative segregation for those inmates who, *inter alia*, have been diagnosed with serious mental illnesses. *See Medina-Rodriguez v. Frank*, No. 1:22-cv-471, 2022 WL 17038113, at *2 n.2 (W.D. Mich. Nov. 17, 2022). "Inmates are classified according to stage, with corresponding restrictions." *Id.*

PageID.3.) Plaintiff appeared before a hearings officer on April 16, 2024, and he was sanctioned with 7 days' detention and 30 days' loss of privileges (LOP). (*Id.*) Plaintiff contends that despite already serving the 7 days of detention, he has not been released to general population to serve his 30 days' LOP. (*Id.*) Plaintiff alleges that, instead, he is being kept in the Start Now program. (*Id.*)

Plaintiff claims that the Start Now program is being used to punish him because he has a "major mental illness disorder." (*Id.*) He avers that he is subject to the following restrictions in the Start Now program: (1) he is not allowed to order store food items; (2) he has no library or law library; (3) he cannot leave his cell without being cuffed; (4) he has no "program or personal TV"; (5) he may make only one phone call per week; (6) he cannot properly clean his cell by himself; and (7) he has "no fundraiser[s]." (*Id.*) Plaintiff claims that he already completed the Start Now program on December 7, 2023, and that the program "is a fraud by the way to steal money from the government." (*Id.*)

Based on the foregoing, Plaintiff avers that Defendants violated his rights under the First, Eighth, and Fourteenth Amendments. (*Id.*, PageID.2.) He also asserts violations of the ADA. (*Id.*) Additionally, Plaintiff's allegations suggest that he is bringing claims regarding Defendants' alleged embezzlement of government funds. (*Id.*, PageID.3.) Plaintiff seeks unspecified injunctive relief. (*Id.*, PageID.1.)

## II.  Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355

U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

    A.    **Section 1983 Claims**

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive

rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### 1. First Amendment

Plaintiff vaguely states that his placement in the Start Now program violates his First Amendment rights. (Compl., ECF No. 1, PageID.2.) The First Amendment provides:

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

U.S. Const. amend. I. Plaintiff's complaint, however, is devoid of any facts from which the Court could infer that Plaintiff's placement in the Start Now program violated his First Amendment rights in any way. Accordingly, Plaintiff's First Amendment claims will be dismissed.

### 2. Eighth Amendment

Plaintiff also contends that his placement in the Start Now program violates his Eighth Amendment rights because it constitutes cruel and unusual punishment. (Compl., ECF No. 1, PageID.2.)

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. Further, the Eighth Amendment protects against the denial of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). However, the Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or

7

"other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (1987). "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim regarding the conditions of confinement, the prisoner must show that he faced a sufficiently serious risk to his health or safety and that Defendants acted with "'deliberate indifference' to inmate health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims).

In this action, Plaintiff alleges that he suffers from a "major mental illness disorder," and he suggests that the conditions within the Start Now program are akin to a restrictive segregation setting. Moreover, Plaintiff identifies all Defendants as members of the Security Classification Committee (SCC), which was responsible for placing Plaintiff in the Start Now program. (Compl., ECF No. 1, PageID.2.) Although Plaintiff has by no means proven his Eighth Amendment claims, at this stage of the proceedings, taking Plaintiff's factual allegations as true and in the light most

8

favorable to him, the Court will not dismiss Plaintiff's Eighth Amendment claims against Defendants. *Cf. J.H. v. Williamson Cnty., Tenn.*, 951 F.3d 709, 719 (6th Cir. 2020) ("Placement of a mentally-ill detainee in solitary confinement 'raises a genuine concern that the negative psychological effects of his segregation will drive him to self-harm.'" (citation omitted)); *Snider v. Saad*, No. 1:20-cv-963, 2020 WL 6737432, at *7–8 (W.D. Mich. Nov. 17, 2020) (concluding that the prisoner-plaintiff's Eighth Amendment claim against members of the SCC regarding his conditions of confinement, which he alleged were more severe than typical conditions of segregation, and which he alleged had a particularly "deleterious impact on him" due to his mental illness could not be dismissed on initial review).

### 3. Fourteenth Amendment

#### a. Due Process

Plaintiff suggests that his continued placement in the Start Now program violates his rights under the Fourteenth Amendment's Due Process Clause. (Compl., ECF No. 1, PageID.2.)

##### (i) Procedural Due Process

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures

attendant upon that deprivation were constitutionally sufficient . . . ." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

The United States Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, the Supreme Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. 515 U.S. 472, 484 (1995). According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995).

Here, Plaintiff appears to suggest that he was placed in the Start Now program without due process. He contends that the conditions are similar to segregation, and that he does not have many of the same privileges that he would receive in general population. Plaintiff also avers that he cannot leave his cell without being handcuffed. (Compl., ECF No. 1, PageID.3.) Plaintiff does not allege that his placement in the Start Now program affects the duration of his sentence, and he fails to allege sufficient facts to show that the Start Now program is an atypical and significant deprivation.

The Supreme Court repeatedly has held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum*, 427 U.S. at 228–29. Although Plaintiff contends that the conditions are similar to segregation and that he cannot leave his cell without being handcuffed, Plaintiff alleges insufficient facts to suggest that his placement in the Start Now program is an atypical and significant deprivation. *See, e.g.*, *Jackson v. Berean*, No. 1:18-cv-1075, 2019 WL 1253196, at *11 (W.D. Mich. Mar. 19, 2019) ("[The Start program], which is less restrictive on the whole than the administrative segregation at issue in *Sandin*, necessarily falls short of an atypical and significant hardship."), *aff'd*, No. 19-1583, 2019 WL 6208147 (6th Cir. Nov. 19, 2019); *Dickerson v. Davids*, No. 1:21-cv-401, 2021 WL 3928667, at *4 (W.D. Mich. Sept. 2, 2021).

Moreover, to the extent Plaintiff describes the Start Now program as akin to segregation, generally only periods of segregation lasting for a year or more have been found to be atypical and significant. *See, e.g.*, *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (concluding that thirteen years of segregation implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (finding that eight years of segregation implicates a liberty interest); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008) (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, i.e., three years without an explanation from prison officials, implicates a liberty interest). While Plaintiff avers that he

completed the Start Now program previously, his complaint suggests that this time around, he has only been in the Start Now program since April of 2024.

Accordingly, Plaintiff's Fourteenth Amendment procedural due process claims regarding his placement in the Start Now program will be dismissed.

### (ii) Substantive Due Process

To the extent that Plaintiff intended to raise a substantive due process claim, he fails to state such a claim. "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). Specifically, "[s]ubstantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)).

Here, Plaintiff fails to set forth any facts from which the Court could infer conduct that is sufficiently outrageous to support a substantive due process claim. While it is clear that Plaintiff disagrees with his placement in the Start Now program, his allegations fall short of showing the sort of egregious conduct that would support

a substantive due process claim. Accordingly, any intended substantive due process claims against Defendants will also be dismissed.

### b. Equal Protection

Plaintiff also suggests that his placement in the Start Now program violates his rights under the Fourteenth Amendment's Equal Protection Clause. (Compl., ECF No. 1, PageID.2.)

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state an equal protection claim, Plaintiff must show "intentional and arbitrary discrimination" by the state; that is, he must show that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). Further, "'[s]imilarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)).

Plaintiff's complaint is scant, but it appears that he takes issue with the conditions in the Start Now program because they are not conditions that general population inmates are subjected to. Plaintiff, however, fails to allege any facts to suggest that general population inmates are similar to inmates in the Start Now

program in all relevant aspects. Instead, his allegations of discriminatory treatment are wholly conclusory. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Furthermore, even viewing Plaintiff's equal protection claims as class-of-one claims, the Court would reach the same conclusion because Plaintiff's equal protection claims are wholly conclusory, and he has alleged no facts that plausibly suggest that his equal protection rights were violated.

Moreover, Plaintiff's complaint is devoid of any facts suggesting that the named Defendants were involved in the alleged violation of his equal protection rights. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights). Plaintiff's Fourteenth Amendment equal protection claims will, therefore, be dismissed.

### B. ADA Claims

Plaintiff also contends that his placement in the Start Now program violates his rights under the ADA. (Compl., ECF No. 1, PageID.2.) According to Plaintiff, Defendants use the Start Now program to punish him and other inmates for having major mental illnesses. (*Id.*, PageID.3.)

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the

14

benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. In the ADA, the term "disability" is defined as follows: "[1] a physical or mental impairment that substantially limits one or more of the major life activities of such individual; [2] a record of such an impairment; or [3] being regarded as having such an impairment." *Id.* § 12102(2).

The Supreme Court has held that Title II of the ADA applies to state prisons and inmates. *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210–12 (1998). The proper defendant for Title II ADA claims is the public entity or an official acting in his official capacity. *Carten v. Kent State Univ.*, 282 F.3d 391, 396–97 (6th Cir. 2002); *see, e.g.*, *Tanney v. Boles*, 400 F. Supp. 2d 1027, 1044 (E.D. Mich. 2005) (citations omitted). Here, Plaintiff sues Defendants in their official and personal capacities. Because Plaintiff may not pursue ADA claims against Defendants in their personal capacities, any intended ADA claims against Defendants in their personal capacities will be dismissed.

As to Plaintiff's official capacity claims, the State of Michigan, acting through the MDOC, is not necessarily immune from Plaintiff's claims under the ADA. *See, e.g.*, *Tanney*, 400 F. Supp. 2d at 1044–47. The ADA "validly abrogates state sovereign immunity" for "conduct that *actually* violates the Fourteenth Amendment[.]" *United States v. Georgia*, 546 U.S. 151, 159 (2006). If conduct violates the ADA but not the Fourteenth Amendment, then the Court must determine whether the ADA validly abrogates state sovereign immunity. *Id.* At this stage of the proceedings, the Court

15

will presume that the ADA validly abrogates state sovereign immunity for Plaintiff's ADA claims.

Turning to the merits of Plaintiff's ADA claims, as noted above, Plaintiff suggests that mentally ill inmates, including himself, in the Start Now program are not provided various programs and services because of their mental disabilities. At this stage of the proceedings, taking Plaintiff's factual allegations in the light most favorable to him, the Court concludes that Plaintiff's ADA official capacity claims may not be dismissed on initial review.

However, the courts have recognized that, where an entity is named as a defendant, official capacity claims against employees of the entity are redundant. *See Foster v. Michigan*, 573 F. App'x 377, 390 (6th Cir. 2014) (finding official capacity suits against defendant agency's employees superfluous where the state and agency were also named as defendants); *see also Faith Baptist Church v. Waterford Twp.*, 522 F. App'x 332, 327 (6th Cir. 2013) ("Having sued Waterford Township, the entity for which Bedell was an agent, the suit against Bedell in his official capacity was superfluous.") (citing *Foster*); *Petty v. Cnty. of Franklin*, 478 F.3d 341, 349 (6th Cir. 2007) ("To the extent that Petty's suit is against [Sheriff] Karnes in his *official* capacity, it is nothing more than a suit against Franklin County itself."), *abrogated on other grounds by Twombly,* 550 U.S. at 561–62, and *Iqbal,* 556 U.S. at 679. Likewise, Plaintiff's official capacity claims against Defendants Washington, Davids, Vonn, Dunigan, Jansen, Milastend, Santiago, and Maranka are redundant of one another because each constitutes an identical suit against the MDOC or the State of

16

Michigan for a violation of the ADA. *See Foster*, 573 F. App'x at 390 (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). The Court, therefore, will allow Plaintiff's official capacity claim under the ADA only against Defendant Washington as the highest ranking official. Accordingly, Plaintiff's official capacity ADA claims against Defendants Davids, Vonn, Dunigan, Jansen, Milastend, Santiago, and Maranka will be dismissed.

    **C.    Claims Regarding Alleged Embezzlement of Government Funds**

Plaintiff contends that Defendants use the Start Now program to "steal money from the government." (Compl., ECF No. 1, PageID.3.) To the extent that Plaintiff intended to bring an "embezzlement claim" against Defendants, embezzlement is a crime under federal or state law and is not a private cause of action. *Cf. Ticor Title Ins. Co. v. Nat'l Abstract Agency, Inc.*, No. 05-CV-73709-DT, 2007 WL 2710113, at *10 (E.D. Mich. Sept. 13, 2007) (discussing that although "in certain circumstances, [courts may] infer a private cause of action, where there is a bare criminal statute, with no indication that civil enforcement is available, a private cause of action will not be inferred" and concluding that a claim for embezzlement alleges "violation of [a] purely criminal statute[]" (citations omitted)); *Stern v. Epps*, 464 F. App'x 388, 393 (5th Cir. 2012) ("Embezzlement and money laundering are crimes under Mississippi law, not private causes of action." (citations omitted)). Accordingly, any intended "embezzlement claims" will be dismissed.

17

**Conclusion**

The Court will grant Plaintiff's motion to proceed *in forma pauperis* (ECF No. 2). Having conducted the review required by the PLRA, the Court will dismiss the following claims for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e) and 1915A, and 42 U.S.C. § 1997e(c): (1) Plaintiff's First Amendment claims; (2) Plaintiff's Fourteenth Amendment due process and equal protection claims; (3) Plaintiff's personal capacity ADA claims; and (4) Plaintiff's official capacity ADA claims against Defendants Davids, Vonn, Dunigan, Jansen, Milastend, Santiago, and Maranka. The following claims remain: (1) Plaintiff's Eighth Amendment claims against all Defendants; and (2) Plaintiff's official capacity ADA claim against Defendant Washington.

An order consistent with this opinion will be entered.

Dated: June 17, 2024 /s/ Phillip J. Green
PHILLIP J. GREEN
United States Magistrate Judge